## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TECHNIPLAS, LLC, *et al.,* | Case No. 20-11049 (LSS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: July 22, 2020 at 2:00 p.m. (ET)** **Objection Deadline: July 15, 2020 at 4:00 p.m. (ET)** |

**MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) TO REJECT CERTAIN EXECUTORY CONTRACTS, (II) TO REJECT CERTAIN UNEXPIRED LEASES, (III) TO ABANDON CERTAIN PERSONAL PROPERTY, AND (IV) TO AUTHORIZE AND APPROVE PROCEDURES TO REJECT EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **PARTIES RECEIVING THIS MOTION SHOULD LOCATE THEIR NAMES AND THEIR CONTRACTS OR LEASES ON EXHIBIT 1 AND EXHIBIT 2 OF THE PROPOSED ORDER ATTACHED HERETO AND READ THE CONTENTS OF THIS MOTION CAREFULLY.**

The debtors and debtors in possession in the above captioned cases (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") pursuant to section 105 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**"), and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for an order, substantially in the form attached hereto as **Exhibit A** (the "**Proposed Order**") (i) authorizing and approving the rejection of certain executory contracts, as set forth in **Exhibit 1** to the Proposed Order (the "**Contracts**"),[2]

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include:  Techniplas, LLC (7921); DMP Monterrey Holdings LLC (5888); DMP International Holdings, LLC (5922); Nyloncraft, Inc. (6035); Nyloncraft of Michigan, LLC (9613); DMP Exports Inc. (2366); Techniplas Finance Corp. (8207); and WEIDPLAS North America, LLC (6945). The address of the Debtors' corporate headquarters is N44 W33341 Watertown Plank Road, Nashotah, Wisconsin 53058.

[2]    Nothing in this Motion shall constitute an admission by the Debtors as to the characterization of any other contract, lease, or other agreement of the Debtors not rejected herein as an executory contract or unexpired lease or whether any claimants under any such contract, lease or other agreement are time-barred from asserting claims against the Debtors. The Debtors reserve all rights with respect to the characterization of any such agreements.

effective as of the Contract Rejection Date (as defined below); (ii) authorizing and approving the rejection of certain unexpired leases for nonresidential real property, as set forth in **Exhibit 2** to the Proposed Order (the "**Leases**"), as of the date the Debtors surrendered the premises to the landlord (as set forth below), (iii) authorizing and approving the abandonment certain Personal Property (as defined below), and (iv) authorizing and approving procedures to reject executory contracts and unexpired leases. In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully state as follows:

### RELIEF REQUESTED

1.      By this Motion, pursuant to section 105 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, the Debtors seek entry of the Proposed Order (i) authorizing and approving the rejection of the Contracts effective as of the date of this Motion (the "**Contract Rejection Date**"), (ii) authorizing and approving the rejection of the Leases effective as of the date the Debtors have surrendered the premises to the landlord by: (a) the delivery of the keys, key codes, or alarm codes to the premises, or as applicable, to the applicable lease counterparty, or, if not delivering such keys or codes, (b) providing notice that the landlord may re-let the premises (the "**Lease Rejection Date**"), (iii) abandon certain Personal Property (as defined below), and (iv) authorizing and approving procedures to reject executory contracts and unexpired leases (the "**Rejection Procedures**").

2.      For the reasons set forth herein, the Debtors submit that the relief requested is in the best interests of the Debtors, their estates, creditors, and other parties in interest; and therefore should be granted.

**JURISDICTION, VENUE, AND PREDICATES FOR RELIEF**

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(b), and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012 (Sleet, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b) and, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The predicates for the relief requested by this Motion are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rules 6006 and 6007.

**BACKGROUND**

**A.      General Background**

5.      On May 6, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby commencing the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      On May 15, 2020 the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors [D.I. 11]. A trustee or examiner has not been requested or appointed in the Chapter 11 Cases.

7.      Prior to the Petition Date, the global spread of the COVID-19 pandemic significantly hampered the Debtors' ability to effectively operate their business. The outbreak of

COVID-19 had particularly impacted the Debtors' ability to continue operations at the manufacturing facilities located in Auburn, Alabama and Ankeny, Iowa. Shortly before commencing the Chapter 11 Cases, the Debtors began the process of winding down those two facilities and terminating a majority of employees there.

8.      Additional factual background and information regarding the Debtors, including their business operations, their corporate and capital structure, their restructuring activities, and the events leading to the commencement of these Chapter 11 Cases, is set forth in detail in the *Declaration of Peter J. Smidt in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 15].

**B.      The Bidding Procedures; Sale**

9.      On May 21, 2020, this Court entered the *Order (I) Approving (A) Bidding Procedures For Sales Of Debtors Assets, (B) Stalking Horse Bid Protections, (C) Form And Manner Of Notice Of Sales, Auctions, And Sale Hearings, And (D) Assumption And Assignment Procedures And Form And Manner Of Notice Of Assumption And Assignment; (II) Authorizing Designation Of Additional Stalking Horse Bidders; (III) Scheduling Auctions And Sale Hearings; And (IV) Granting Related Relief* [D.I. 159], among other things, approved a stalking horse bidder for certain "Designated Assets" and an auction process, and approved procedures for the sale of the "Non-Designated Assets".

10.      On June 12, 2020 this Court entered an Order approving the sale of certain Designated Assets to Techniplas Acquisition Co., LLC ("**Acquisition**") [D.I. 282] and a separate Order approving the sale of certain Non-Designated Assets to Revere Plastics Systems, LLC ("**Revere**," and together with Acquisition, the "**Purchasers**")  [D.I. 272] (together, the "**Sales**"). The Sales are expected to close on or before June 19, 2020.

4

11. As a result of the Sales, substantially all of the Debtors' operating assets have been, or will be, sold. Upon the closings of the Sales, the Debtors will have no ongoing business operations, and they will be winding down their affairs.

## C. The Rejected Contracts

12. The Debtors seek to reject Contracts as set forth in **Exhibit 1** to the Proposed Order, effective as of Contract Rejection Date. The Debtors, in consultation with their professional advisors, reviewed the Contracts that were not acquired by the Purchasers, and determined, in their business judgment, that the Contracts are not necessary to wind down the Debtors' operations and liquidate their estates, and it would therefore be beneficial to the estates to reject the Contracts as soon as possible.

## D. The Rejected Leases

13. The Debtors seek to reject leases as set forth in **Exhibit 2** to the Proposed Order, effective as of the Lease Rejection Date. The leased properties and the premises the properties exist thereon (collectively, the "**Premises**") are no longer necessary to the Debtors' business operations and the Debtors can avoid unnecessary rent and related charges through prompt rejection of such Leases. By rejecting the Leases, the Debtors anticipate that they will preserve significant value for the Debtors' estates. Furthermore, the Debtors have determined in their business judgment that (a) the costs of the Leases outweigh any marginal benefits that could possibly be achieved from assignments or subleases of the Leases; and (b) the cost of the Leases exceeds any benefits associated therewith. Rejection of the Leases as of the Lease Rejection Date is warranted under the facts and circumstances and consistent with prior orders of the Court.

## E. The Personal Property to be Abandoned

14. To the extent that any equipment, fixtures, furniture, or other personal property (the "**Personal Property**") is located at the Premises, the Debtors will evaluate such remaining

Personal Property at the Premises to determine whether (a) the Personal Property is of inconsequential value, or (b) the cost of removing and storing the Personal Property for future use, marketing, or sale exceeds its value to the Debtors' estates. Because the Debtors plan to shut down all operations at the Premises, the Personal Property, if any, will no longer be necessary for the administration of the Debtors' estates.

15.     Accordingly, to reduce postpetition administrative costs and, in the exercise of the Debtors' sound business judgment, the Debtors believe that the abandonment of Personal Property that may be located at each of the Premises, if any, is appropriate and in the best interests of the Debtors, their estates, and their creditors.

**F.     The Proposed Rejection Procedures**

16.     By this Motion the Debtors seek entry of the Proposed Order authorizing and approving the following Rejection Procedures with respect to the later rejection of further executory contracts and leases not specifically enumerated in Exhibit 1 and Exhibit 2 of the Proposed Order (collectively, the "**Agreements**"):

a.     *Rejection Notice*. The Debtors shall file one or more notices in the form attached hereto as **Exhibit B** (each, a "**Rejection Notice**") to reject an Agreement or Agreements pursuant to section 365 of the Bankruptcy Code, which Rejection Notice(s) shall set forth, among other things, with respect to each Agreement listed on the Rejection Notice: (i) the Agreement to be rejected; (ii) the Debtor or Debtors party to such Agreement; (iii) the names and addresses of the counterparties to such Agreement; (iv) the proposed effective date of the rejection for such Agreement (the "**Rejection Date**"); and (v) if such Agreement is a unexpired lease for real property, the personal property to be abandoned, if any. The Rejection Notice shall also set forth the deadlines and procedures for filing objections to the Rejection Notice (as set forth below). Each Rejection Notice may list multiple Agreements; provided that the number of counterparties to Agreements listed on any one Rejection Notice shall be limited to no more than 100. For the avoidance of doubt, the Debtors may serve multiple Rejection Notices, as long as the counterparties listed on each notice are limited to no more than 100.

b.     *Service of Rejection Notice*. The Debtors will cause each Rejection Notice to be served via email, if available, and by overnight delivery service upon

the Agreement counterparties affected by such Rejection Notice and their counsel, if known, and by first class mail, email, or fax upon(i) the U.S. Trustee for the District of Delaware; (ii) the Official Committee of Unsecured Creditors; (iii) counsel to the DIP Agent; (iv) counsel to Bank of America, N.A., as agent the Prepetition ABL Facility; and (v) any party that requests service pursuant to Bankruptcy Rule 2002.

c.    ***Objection Procedures***. Parties objecting to a proposed rejection must file and serve a written objection so that such objection is filed with the Court on the docket of the Debtors' chapter 11 cases and actually received by the following parties (collectively, the "**Objection Service Parties**") no later than seven (7) days after the date the Debtors serve the relevant Rejection Notice (the "**Rejection Objection Deadline**"): (i) Techniplas, LLC, N44 W33341 Watertown Plank Road, Nashotah, Wisconsin 53058 (Attn: Pete Smidt (Pete.Smidt@fticonsulting.com); (ii) counsel to the Debtors, (a) White & Case LLP, 1221 Avenue of the Americas, New York, New York 10020 (Attn: David Turetsky, Esq. (david.turetsky@whitecase.com), and Andrew Zatz, Esq. (azatz@whitecase.com)), and (b) Fox Rothschild LLP, 919 North Market Street, Suite 300, Wilmington, Delaware 19801 (Attn: Jeffrey Schlerf, Esq. (jschlerf@foxrothschild.com)); (iii) counsel to the DIP Term Lenders party to the DIP Term Credit Agreement, and the Prepetition Notes party to the Prepetition Notes Indenture, (a) Arnold & Porter Kaye Scholer LLP, 250 W 55th St, New York, NY 10019 (Attn: Jonathan I. Levine, Esq. (Jonathan.Levine@arnoldporter.com)), and (b) Cole Schotz P.C., 500 Delaware Avenue, Ste 1410, Wilmington, DE 19801 (Attn: Kate Stickles (kstickles@coleschotz.com)); (iv) counsel to Bank of America, N.A., as agent the Prepetition ABL Facility, Sidley Austin LLP, 1 S Dearborn St, Chicago, IL 60603 (Attn: Andrew R. Cardonick, Esq. (acardonick@sidley.com) and Dennis Twomey, Esq. (dtwomey@sidley.com)); (vi) counsel to the Official Committee of Unsecured Creditors, (a) Akin Gump Strauss Hauer & Feld LLP (Attn: Arik Preis, Esq. (apreis@akingump.com) and Kevin Zuzolo, Esq. (kzuzolo@akingump.com)), and (b) Potter Anderson & Corroon LLP, 1313 N. Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Christopher M. Samis, Esq. (csamis@potteranderson.com)); and (vii) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 (Attn: Linda Richenderfer (Linda.Richenderfer@usdoj.gov)).

d.    ***No Objection***. If no objection to the rejection of any Agreements is timely filed, the Debtors shall file with the Court a proposed order to approve the rejection of such Agreement(s) under certificate of counsel. Upon entry of the order by the Court, each Agreement listed in the applicable Rejection Notice shall be rejected as of the Rejection Date set forth in the Rejection Notice or such other date as the Debtors and the counterparty or counterparties to such Agreement(s) agree; provided that the effective date of a rejection of a real property lease shall not occur until the later of (i) the

7

date the Debtors file and serve a Rejection Notice for the lease, and (ii) vacate the premises and tender control of the premises to the applicable lease counterparty.

e.  ***Unresolved Objections***. If one or more objections to the rejection of any Agreement(s) listed in the applicable Rejection Notice is timely filed and properly served as specified above and not withdrawn or resolved, the Debtors shall file a notice for a hearing to consider the rejection of the Agreement(s) implicated by such objection(s) and shall provide at least ten (10) days' notice of such hearing to each objecting party and the Objection Service Parties. If any such objection is overruled or withdrawn, following entry of an order by the Court, the Agreement(s) that are the subject of such objection shall be rejected as of the Rejection Date set forth in the Rejection Notice or such other date as agreed by the parties or determined by the Court as set forth in any order overruling such objection.

f.  ***No Application of Deposits***. If the Debtors have deposited monies with an Agreement counterparty as a security deposit or other arrangement, such Agreement counterparty may not setoff, recoup, or otherwise use such monies without further order of the Court, unless the Debtors and the counterparty or counterparties to such Agreement(s) otherwise agree.

g.  ***Abandoned Property***. The Debtors are authorized, but not directed, at any time on or after the applicable Rejection Date, to remove or abandon, at their option, any of the Debtors' personal property that may be located on the Debtors' leased premises that are subject to a rejected Agreement. The Debtors shall generally describe the abandoned personal property in the Rejection Notice. Absent a timely objection, the property will be deemed abandoned pursuant to section 554 of the Bankruptcy Code, as is, effective as of the Rejection Date.[3] Agreement counterparties to leases may, in their sole discretion and without further order of this Court, utilize and/or dispose of such property without liability to the Debtors or third parties and, to the extent applicable, the automatic stay is modified to allow such disposition.

h.  ***Rejection Damages***. Claims arising out of the rejection of Agreements, if any, must be filed on or before the later of (i) the deadline for filing proofs of claim established in these chapter 11 cases, and (ii) twenty-one (21) days after the Rejection Date. If no proof of claim is timely filed, such claimant shall be forever barred from asserting a claim for damages arising from the rejection and from participating in any distributions on such a claim that may be made in connection with these Chapter 11 Cases.

i.  ***Removal from Schedule***. The Debtors reserve the right to remove any Agreement from the schedule to any Rejection Notice at any time prior to

---

[3]     If the Rejection Date specified in the Rejection Notice with respect to any Agreement that is a lease of nonresidential real property predates the removal of any property not otherwise generally described in the Rejection Notice, the Rejection Date will not become effective until such date the property is removed from the leased premises.

the later of the Rejection Date or the date of entry of an order of the Court approving the rejection.

17.     Authorizing and approving the Rejection Procedures will streamline the administration of these Chapter 11 Cases and enhance the efficiency of the reorganization process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Agreement that the Debtors may seek to reject. The Debtors submit that the information provided on the Rejection Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection in their sound business judgment.

## BASIS FOR RELIEF

**A.     The Rejection of the Contracts and the Leases is Appropriate**

18.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 COLLIER ON BANKRUPTCY ¶ 365.01[1] (15th ed. 1993)).

19.     The standard applied to determine whether the rejection of an executory contract should be authorized is the "business judgment" standard. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *see also In re HQ Global Holdings, Inc.*, 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he

9

business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).

20.    The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. *See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor's business judgment to reject an executory contract. *See, e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re Minges*, 602 F.2d 38, 43 (2d Cir. 1979); *In re Riodizio*, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

21.    Upon finding that the Debtors have exercised their sound business judgment in determining that rejection of the Contracts and Leases is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. *See, e.g.*, *In re Fed. Mogul Glob., Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.)*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

22.     As an integral component of their efforts to preserve and maximize the value of their estates and reduce their potential administrative claim exposure in these Chapter 11 Cases by, among other things, eliminating unnecessary costs, the Debtors have determined, in their business judgment, that the Contracts and Leases are burdensome and provide no value to their estates. The Contracts were not assumed and assigned to the Purchasers in connection with the Sales and are unnecessary to the wind down of these Chapter 11 Cases. If not rejected, the Contracts could potentially be a drain on the estates and a hindrance to the Debtors' chapter 11 efforts. The Debtors seek to reject the Leases in order to avoid the incurrence of any additional, unnecessary expenses related to the Leases, and the maintenance of the facilities located on the respective premises. Absent rejection, the Leases will continue to burden the Debtors' estates with meaningful administrative expenses, without sufficient marginal revenue to justify the incurrence of such costs. Rejecting the Leases will help increase the Debtors' liquidity and otherwise facilitate the efficient administration of the Debtors' estates. Moreover, the Debtors have determined that there is no net benefit likely to be realized from efforts to market the Leases for potential assignment or sublease, and that there is little if any likelihood that the Debtors will be able to realize value from the Leases. Accordingly, the Debtors have determined that the Leases constitute unnecessary drains on the estates' resources and, therefore, rejection reflects the Debtors' exercise of sound business judgment.

23.     In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Contracts and Leases under section 365(a) of the Bankruptcy Code is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

**B.** **The Retroactive Rejection of the Contracts and the Leases as of the Respective Rejection Dates is Appropriate**

24.     To avoid paying any unnecessary expenses related to the Contracts and Leases, the Debtors seek to (a) reject the Contracts effective as of the Contract Rejection Date, and (b) reject the Leases effective as of the Lease Rejection Date. The Court has routinely authorized a debtor's retroactive rejection of executory contracts and leases. *See, e.g., In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004); *In re Fleming Cos., Inc.*, 304 B.R. 85, 96 (Bankr. D. Del. 2003). Section 365 of the Bankruptcy Code does not restrict a bankruptcy court from applying rejection retroactively. *See In re Jamesway Corp.*, 179 B.R. 33, 37 (S.D.N.Y. 1995) (stating that section 365 does not include "restrictions as to the manner in which the court can approve rejection"); *see also In re CCI Wireless, LLC*, 297 B.R. 133, 138 (D. Colo. 2003) (noting that section 365 "does not prohibit the bankruptcy court from allowing the rejection of [leases] to apply retroactively").

25.     Courts have held that a bankruptcy court may, in its discretion, authorize rejection retroactively to a date prior to entry of an order authorizing such rejection where the balance of equities favors such relief. *See In re Thinking Machs. Corp.*, 67 F.3d 1021, 1028–29 (1st Cir. 1995) (stating that "rejection under section 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively"); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (stating "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of § 365(a)"); *CCI Wireless*, 297 B.R. at 140 (holding that a "court has authority under section 365(d)(3) to set the effective date of rejection at least as early as the filing date of the motion to reject"); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, No. 03-6419, at *3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of

the equities favors this solution."); *see also In re At Home Corp.*, 392 F.3d 1064, 1065–66 (9th Cir. 2004) (holding "that a bankruptcy court may approve retroactively the rejection of an unexpired nonresidential lease"); *see also TW, Inc. v. Angelastro (In re TW, Inc.)*, No. 03-10785, at *2 (D. Del. Jan. 14, 2004) (upholding bankruptcy court ruling denying rejection of leases *nunc pro tunc* to the petition date when the debtor had not surrendered possession prior to the petition date).

26.     The facts in the Chapter 11 Cases and the balance of the equities favor the Debtors' rejection of the Contracts effective as of the Contract Rejection Date. Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for agreements that are not necessary to their wind-down efforts. Moreover, the counterparties to the Contracts (collectively, the "**Contract Counterparties**") will not be unduly prejudiced if the Contracts are rejected effective as of the Contract Rejection Date because, on the date hereof, the Debtors have served this Motion on the Contract Counterparties, via overnight delivery, electronic mail, and/or facsimile, stating that the Debtors are rejecting each of the Contracts effective as of the Contract Rejection Date.

27.     Furthermore, the balance of equities favors rejection of the Leases effective as of the Lease Rejection Date. Without such relief, the Debtors will incur unnecessary administrative expenses related to the Leases—agreements that do not provide a net benefit to the Debtors' estates in light of the rent and related charges the Debtors are obligated to pay thereunder without corresponding and commensurate benefits to the estates. *See* 11 U.S.C. § 365(d)(3). The landlords of the Leases (collectively, the "**Landlords**") will not be unduly prejudiced if the rejection is deemed effective as of the Lease Rejection Date. Possession of the Premises will be delivered to each respective landlord, along with an unequivocal and irrevocable statement of surrender and

abandonment of the Premises. Further, the Landlords are receiving notice of the Motion on the date hereof because the Debtors have served this Motion on the Landlords, via overnight delivery, electronic mail, and/or facsimile, stating that the Debtors are rejecting each of the Leases effective as of the Lease Rejection Date.

28.     Accordingly, the Debtors respectfully submit that the Court deem the Contracts rejected retroactively as of the Contract Rejection Date, and deem the Leases rejected retroactively as of the Lease Rejection Date.

**C.     The Abandonment of the Personal Property is Appropriate**

29.     The abandonment of the Personal Property is appropriate and authorized by the Bankruptcy Code. Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." Courts generally give a debtor in possession great deference to its decision to abandon property. *See, e.g., In re Vel Rey Props., Inc.*, 174 B.R. 859, 867 (Bankr. D.D.C. 1994) ("Clearly, the court should give deference to the trustee's judgment in such matters."). Unless certain property is harmful to the public, once a debtor has shown that it is burdensome or of inconsequential value to the estate, a court should approve the abandonment. *Id.*

30.     Before deciding to abandon the Personal Property, if any, the Debtors will determine whether the costs of moving and storing such Personal Property outweigh any benefit to the Debtors' estates. Further, any efforts by the Debtors to move or market the Personal Property could unnecessarily delay the Debtors' surrender of the Premises and the rejection of the Leases. Accordingly, it is in the best interests of the Debtors and their estates for the Debtors to abandon Personal Property located on the Premises, effective as of the Lease Rejection Date.

31.     Courts in this jurisdiction have approved relief similar to the relief requested herein. *See, e.g., In re Forever 21, Inc.,* No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (authorizing, but not directing, the debtors to abandon personal property that may be located at the debtors' leased premises that are subject to a rejected lease); *In re Things Remembered, Inc.,* No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re Charming Charlie Holdings Inc.,* No. 17-12906 (CSS) (Bankr. D. Del. Jan. 10, 2018) (same); *In re Dex Media, Inc.,* No. 16-11200 (KG) (Bankr. D. Del. June 8, 2016) (same); *In re Sports Auth. Holdings, Inc.,* No. 16-10527 (MFW) (Bankr. D. Del. Apr. 4, 2016) (same).[4]

**D.     The Rejection Procedures are in the Best Interests of the Debtors' Estates and Should be Approved.**

32.     The Debtors have determined, in their sound business judgment that the later rejection of Agreements in accordance with the Rejection Procedures proposed herein is and will be in the best interest of the Debtors' estates. Establishing the Rejection Procedures will streamline the administration of these Chapter 11 Cases and enhance the efficiency of the reorganization process by eliminating substantial legal expenses that would otherwise be incurred if multiple hearings were held on separate motions with respect to every Agreement that the Debtors seek to reject. The Debtors submit that the information provided on the Rejection Notices will provide the Court and interested parties with sufficient information to establish that the Debtors are entitled to make such a rejection in their sound business judgment. Accordingly, the Court should approve the Rejection Procedures.

33.     The Court may authorize the Rejection Procedures based on section 105(a) of the Bankruptcy Code. Section 105(a) codifies the Court's inherent equitable powers to "issue any

---

[4]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Under section 105(a), courts may authorize actions that are essential to the continued operation of a debtor's business. *See In re C.A.F. Bindery, Inc.*, 199 B.R. 828, 835 (Bankr. S.D.N.Y. 1996); *see also In re Friedman's Inc.*, No. 09-10161, 2011 WL 5975283 735−36 (Bankr. S.D.N.Y. 1991) (noting that the "doctrine of necessity" stands for the principle that a bankruptcy court may allow pre-plan payments of prepetition obligations where such payments are critical to the debtor's reorganization process). A bankruptcy court's exercise of its authority under section 105(a) of the Bankruptcy Code is appropriate under the circumstances described herein to carry out one of the central policies underlying chapter 11—i.e., to preserve value and maximize property available to satisfy the Debtor's stakeholders.

34.    The counterparties to the Agreements will not be prejudiced by the Rejection Procedures because, upon receipt of a Rejection Notice, such counterparties will have received advance notice of the Debtors' intent to reject their respective Agreement as of the effective date of such rejection. *See, e.g.*, *In re Thane Int'l, Inc.*, 586 B.R. 540, 548 (Bankr. D. Del. 2018) (finding that the requirements of the Bankruptcy Code are meant to protect the interests of the non-debtor parties to executory contracts, so they may avoid having to deal with an assumption of which they had no notice and which they had no opportunity to contest); *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 970 (Bankr. N.D. Okla. 1990) (holding effective date of rejection of leases was the date the trustee gave notice to lessor of intent to reject); *In re Carlisle Homes, Inc.*, 103 B.R. 524, 535 (Bankr. D.N.J. 1988) (finding debtor may reject executory contract by clearly communicating intention to reject). Additionally, in the case of unexpired leases of nonresidential real property, the Debtors will likely vacate the premises before or upon serving the Rejection Notice, thereby allowing the counterparties to take possession of the property. *See, e.g.*, *Adelphia Bus. Solutions,*

*Inc. v. Abnos*, 482 F.3d 602, 608–09 (2d Cir. 2007) (holding bankruptcy court did not abuse its discretion in finding balance of equities favored making rejection of a nonresidential lease of real property retroactive to date tenant vacated premises, as tenant's action provided landlord with opportunity to relet premises); *In re New Valley Corp*, No. 98-982, 2000 U.S. Dist. LEXIS 12663, at *44–46 (D.N.J. Aug. 31, 2000) (holding that bankruptcy court properly exercised its discretion in adjusting the effective date of rejection from the date the court signed the order authorizing rejection to the date on which the debtor vacated and the landlord exercised control over the property); *In re Amber's Stores, Inc.*, 193 B.R. 819, 827 (Bankr. N.D. Tex. 1996) (holding that lease at issue should be deemed rejected as of the petition date due to equities of the case where debtor turned over keys and vacated premises and served motion to reject lease as soon as possible).

35.     As a procedural matter, "[a] proceeding to assume, reject, or assign an executory contract or unexpired lease . . . is governed by Rule 9014." Fed. R. Bankr. P. 6006(a). Bankruptcy Rule 9014(a) provides that "[i]n a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought." The notice and hearing requirements for contested matters in Bankruptcy Rule 9014 are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" or a similar phrase to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances.").

36.     Under Bankruptcy Rule 6006(f), a debtor may join requests for authority to assume or reject multiple executory contracts or unexpired leases in one motion, subject to Bankruptcy Rule 6006(e). Bankruptcy Rule 6006(f) sets forth six requirements that motions to assume or reject

multiple executory contracts or unexpired leases must satisfy. These requirements are procedural in nature. Bankruptcy Rule 6006(f) provides that a motion to assume or reject multiple executory contracts or unexpired leases that are not between the same parties shall:

a.   state in a conspicuous place that parties receiving the omnibus motion should locate their names and their contracts or leases listed in the motion;

b.   list parties alphabetically and identify the corresponding contract or lease;

c.   specify the terms, including the curing of defaults, for each requested assumption or assignment;

d.   specify the terms, including the identity of each assignee and the adequate assurance of future performance by each assignee, for each requested assignment;

e.   be numbered consecutively with other omnibus motions to assume, assign, or reject executory contracts or unexpired leases; and

f.   be limited to no more than 100 executory contracts or unexpired leases.

37.   The purpose of Bankruptcy Rule 6006(f) is to protect the due process rights of counterparties to the Agreements. Counterparties must be able to locate their Agreements and readily determine whether their Agreements are being rejected.

38.   The Rejection Procedures satisfy Bankruptcy Rule 6006(f), including the 100-contract limit set forth therein. Given the substantial number of Agreements the Debtors will be seeking to reject, obtaining Court approval of each rejection would impose unnecessary administrative burdens on the Debtors and the Court and result in costs to the Debtors' estates that may decrease the economic benefits of rejection or assumption.

39.   In accordance with Bankruptcy Rule 6007(a), the Debtors will provide the United States Trustee and other parties in interest with the requisite notice and an opportunity to object to any proposed abandonment of property.

18

40.     As a result, the Rejection Procedures afford counterparties and all other parties in interest their due process rights by providing notice and the opportunity to be heard. Moreover, the Court maintains authority and oversight in the event of an objection. For the foregoing reasons, the Rejection Procedures should be approved, and the Debtors should be authorized to reject the Agreements consistent with the terms of such procedures.

41.     In sum, the Rejection Procedures will minimize costs to the Debtors' estates and reduce the burden on this Court's docket while protecting parties in interest by providing notice and the opportunity to object and obtain a hearing. Moreover, the Debtors have determined that the Rejection Procedures are an appropriate means to protect and maximize the value of their estates.

42.     Courts in this district often enter orders approving similar relief. *See, e.g.*, *In re Bluestem Brands, Inc.*, No. 20-10566 (MFW) (Bankr. D. Del. Apr. 14, 2020) (approving procedures for rejection of executory contracts and unexpired leases); *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 20, 2019) (same); *In re Forever 21, Inc.*, No. 19-12122 (KG) (Bankr. D. Del. Oct. 28, 2019) (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Apr. 9, 2019) (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 28, 2019) (same); *In re VER Technologies Holdco, LLC*, No. 18-10834 (KG) (Bankr. D. Del. May 4, 2019) (same).[5]

## **RESERVATION OF RIGHTS**

43.     Nothing contained herein is intended to be or should be construed as an admission of the validity of any claim against the Debtors or a waiver of any of the Debtors' rights, defenses, or counterclaims with respect to the Contracts, Leases, Agreements, and Personal Property.

---

[5]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' counsel.

Further, nothing herein constitutes an acknowledgement that any of the Contracts, Leases, and Agreements are executory contracts or unexpired leases under section 365 of the Bankruptcy Code, and/or have not otherwise expired or terminated by their own terms or upon agreement of the parties as of the date hereof.

## WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

44.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

45.     Notice of this Motion has been provided to the following parties, or, in lieu thereof, their counsel:  (i) the U.S. Trustee; (ii) the Official Committee of Unsecured Creditors; (iii) the Contract Counterparties; (iv) the Landlords; (v) the Purchasers; (vi) Bank of America, N.A. as the Prepetition ABL Agent and DIP ABL Agent; (vii) U.S. Bank N.A. as the Prepetition Notes Agent; (viii) the Ad Hoc Group; (ix) Wilmington Savings Fund Society, FSB as the Interim Financing Agent and DIP Term Agent; and (x) any such other party entitled to receive notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## NO PRIOR REQUEST

46.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request

entry of an order (i) granting the relief requested herein and (ii) granting the Debtors such other

and further relief as the Court deems just and proper.

Dated: June 30, 2020
Wilmington, Delaware

Respectfully submitted,

FOX ROTHSCHILD LLP

/s/ Daniel B. Thompson
Jeffrey M. Schlerf (No. 3047)
Carl D. Neff (No. 4895)
Daniel B. Thompson (No. 6588)
919 North Market Street, Suite 300
Wilmington, DE 19801
(302) 654-7444
jschlerf@foxrothschild.com
cneff@foxrothschild.com
danielthompson@foxrothschild.com

David M. Turetsky (admitted *pro hac vice*)
Andrew T. Zatz (admitted *pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
(212) 819-8200
david.turetsky@whitecase.com
azatz@whitecase.com

Fan B. He (admitted *pro hac vice*)
Robbie T. Boone Jr. (admitted *pro hac vice*)
WHITE & CASE LLP
200 South Biscayne Boulevard
Suite 4900
Miami, FL 33131
(305) 371-2700
fhe@whitecase.com
robbie.boone@whitecase.com

*Counsel to Debtors and*
*Debtors-in-Possession*